IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARGARET LEONA ROLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:21CV582 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Margaret Leona Roland brought this action to obtain review of a final decision

of the Commissioner of Social Security denying her claims for supplemental security income

("SSI"), disability insurance benefits ("DIB"), and a period of disability ("POD"). The Court

has before it the administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a POD, DIB, and SSI alleging a disability onset dated of

June 1, 2012. (Tr. 284-91.)[1] The applications were denied initially and again upon

reconsideration. (Tr. 156-63, 168-85.) After an administrative hearing, the ALJ determined on

April 3, 2019, that Plaintiff was not disabled under the Act. (Tr. 50-80, 135-151.) On May 29,

2019, Plaintiff filed a request for review with the Appeals Council. (Tr. 240-41.) She also filed

a new application for DIB and a new application for SSI. (Tr. 309, 311.) The Appeals Council

granted Plaintiff's request for review and issued an order remanding the case to the ALJ for a

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the
Commissioner's Answer. (Docket Entry 8.)

new hearing. (Tr.152-54.) The order observed that the subsequent claims were duplicative and instructed the ALJ to associate the claim files from the original and subsequent claims and issue a new decision on the associated claims (Tr. 154.) After a second administrative hearing, the ALJ determined on January 4, 2021, that Plaintiff was not disabled under the Act. (Tr. 1014-53, 10-49.) On May 24, 2021, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2012, the alleged onset

2

date. (Tr. 13.) The ALJ next found the following severe impairments at step two: obesity, chronic pulmonary insufficiency/bronchitis, and osteoarthritis of the lumbosacral spine. (Tr. 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 15.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform a reduced range of medium work as follows: "She can occasionally climb ramps or stairs. She cannot climb ladders or scaffolds. She can occasionally stoop, kneel, or crouch. She cannot crawl. She is limited to occasional exposure to pulmonary irritants. She must avoid exposure to hazardous conditions." (Tr. 15.) At the fourth step, the ALJ determined that Plaintiff could not perform her past relevant work. (Tr. 19.) At step five, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform. (Tr. 19-20.)

## IV. ISSUES AND ANALYSIS

Plaintiff first contends that, "[t]he ALJ committed a reversible error by failing to assess the impact of diabetes symptoms on [her] residual functional capacity, by discounting [her] testimony regarding uncontrolled diabetes and diabetic neuropathy symptoms in a manner not permitted by Social Security Ruling 16-3p, and by disregarding substantial evidence establishing that [she] has chronically uncontrolled diabetes and hyperglycemia[.]" (Docket Entry 15 at 3.) Plaintiff next contends that "[c]ontrolling Fourth Circuit caselaw establishes that the ALJ committed a reversible error by failing to include a key nonexertional functional restriction in the hypothetical posed to the vocational expert at hearing[.]" (*Id.* at 12.) Last,

3

Plaintiff contends that "[c]ontrolling Fourth Circuit caselaw establishes that substantial evidence does not support the ALJ's conclusion that [Plaintiff's] activities are consistent with his residual functional capacity assessment because the ALJ disregarded [Plaintiff's] qualifying statements regarding the limited extent to which she can perform daily activities and failed to adequately explain how her limited ability to carry out daily activities supports his conclusion that she could sustain an eight-hour workday[.]" (*Id.* at 18.) As explained below, these contentions warrant no relief.

## A. Step Two

As noted, Plaintiff first challenges the ALJ's evaluation of Plaintiff's diabetes and neuropathy. (*Id.* at 3.) As explained below, this objection has no merit.

At step two of the sequential evaluation process, the claimant bears the burden of demonstrating a severe, medically determinable impairment that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909; *Shrecengost v. Colvin*, No. 14CV506, 2015 WL 5126117, at *3 (W.D.N.Y. Sept. 1, 2015) ("[The p]laintiff bears the burden of establishing a severe impairment at step two by furnishing medical and other evidence of the existence thereof as the Commissioner may require, and will not be considered disabled if such evidence is not provided."). The Act describes "a physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. 20

4

C.F.R. §§ 404.1521, 416.921. A statement of symptoms, diagnosis, or medical opinion is not sufficient to establish the existence of an impairment. *Id.* A "[l]icensed physician" or "[l]icensed psychologist" is an "acceptable medical source." 20 C.F.R. §§ 404.1502(a), 416.902(a).

An impairment is "severe" unless it "has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984); *see also* 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *Brookover v. Saul*, No. 2:20-CV-24-M, 2021 WL 4147075, at *4 (E.D.N.C. June 25, 2021). The "severity standard is a slight one." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007).

Additionally, "an error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps." *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considered that impairment in subsequent steps) (citations omitted); *see also Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Garner v. Astrue*, 436 Fed. App'x 224, 225, n* (4th Cir. 2011). However, provided that the claimant has at least one severe impairment, the ALJ must consider the combined effect of all of the claimant's impairments, irrespective of whether they are severe, in determining the claimant's RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e); *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989).

In this case, at step two, the ALJ assessed Plaintiff's diabetes as follows:

> The claimant's diabetes is a non-severe impairment. She testified that her glucose level fluctuates, that it has improved, but that it is not at its recommended level on a sustained basis. She also testified that she becomes lightheaded when her glucose level is elevated, that she has to lie down when she feels that way, and that she feels that way every day. However, her medical history does not substantiate her testimony that she experiences frequent hyperglycemia that causes her to become lightheaded and fatigued. A medical note dated May 21, 2020 provides background information on her disease: Her diabetes medicines included Jardiance, insulin, and metformin. She generally adhered to her medication regimen, but sometimes she was not able to do so due to her low income. She was advised to call the family clinic if she was about to run out of her medicines. She reported that her glucose level had improved, and that she had been feeling much better.[1] (Exhibit B23F/11, 13.) A medical note dated July 23, 2020 provides additional information: Her glucose level was not under control even though she had been taking her medications as prescribed. The dose of her insulin was increased, she was counseled on the "pathophysiology" of diabetes, and she was advised to make lifestyle changes. (Exhibit B24F/5.) Neither medical note supports the claimant's testimony because neither documents that she reported experiencing hyperglycemic-induced lightheadedness and fatigue. Moreover, there is another reason that her testimony is unpersuasive: Her disease is managed in the primary care setting; she is not under the care of an endocrinologist. If her disease were as unmanageable and as severe as she claims, it seems she would require expert care, but her medical history indicates she does not.[2]

> > [1] The medical note does not specify how the claimant's health or sense of well-being improved.

> > [2] It is worth underscoring that no primary care provider has stated that the claimant needs to be evaluated or under the care of a diabetes specialist.

> The claimant's neuropathy is a non-medically determinable impairment. She testified that she has had neuropathy for three

6

or four years. She also testified that her neuropathy seriously affects her ability to use her hands, and that it limits her ability to walk, because she experiences the sensation of fire burning the bottoms of her feet. While her medical history shows that she has received prescriptions for gabapentin and Elavil for neuropathy, it does not document that she has a diagnosis of neuropathy that is supported by clinical or objective evidence. For example, in February 2017, Dr. Eason, a consultative examiner, noted that the claimant alleged disability based on hand neuropathy, but he determined that she did not have the condition. His conclusion was based on the absence of evidence of neuropathy from nerve conduction studies in her medical history. It was also based on the clinical findings of the consultative examination: Her fine motor manipulation was intact, her vibratory sensation was intact, and the coordination testing showed that she could successfully walk on her heels and on her toes. (Exhibit B15F.)

In addition, there is no objective evidence in the claimant's medical history after the consultative examination that would establish that she has neuropathy. More specifically, there is no documentation of the results of a nerve conduction study, a needle electromyography, a tissue biopsy, or other objective study. Nor is there clinical evidence of relevant sensory deficits. In May 2020, Mr. Koval, a registered pharmacist, prescribed gabapentin without clinical evidence of sensatory deficits. While he tested her tested her [sic] for focal deficits, surprisingly, he did not test her for sensory deficits. However, he did ask her for a self-assessment, and her self-assessment of the sensory functioning of her feet does not provide clear support for her allegation that she has neuropathic pain that interferes with her ability to walk during the day: "She reports that she would definitely feel if she stepped on a tack, but would maybe feel a penny. She feels like her feet [are] on fire mostly just at night and makes it hard to sleep." (Exhibit B23F/12-13.)

Moreover, the claimant's recent treatment history shows that she can use her feet without impairment. For example, in February 2020, Dr. Feng, her primary care physician, noted that the claimant's foot strength was intact, and that her gait was "unremarkable." (Exhibit B22F/77.) Similarly, in June, she noted that the claimant's foot strength was intact at 5/5, and that her gait was "unremarkable." (Exhibit B23F/19.)

7

(Tr. 13-14, 997-99, 1011, 647-50, 977, 1005.)

As demonstrated above, in support of his step two assessment, the ALJ pointed to Plaintiff's mild clinical signs, her response to diabetes medication, her normal physical functioning, and her contemporaneous denial of symptoms to her providers. (*See, e.g.,* Tr. 13-14, 997 (5/21/2020) (no complaints of lightheadedness or fatigue; "Patient arrives in good spirits without assistance. . . . She reports that her blood sugars have been looking a lot better and that she has been feeling much better. . . ."); 1009-1011 (7/23/2020) (no complaints of lightheadedness or fatigue); 650 (2/14/2017) ("She functions normally."); 998 ("She reports that she would definitely feel if she stepped on a tack, but would maybe feel a penny. She feels like her feet [are] on fire mostly just at night and makes it hard to sleep."); 977 (2/17/2020) (intact sensation and foot strength, unremarkable gait); 1005 (6/12/2020) (intact foot strength and unremarkable gait); 638, 642 (not easily fatigued); 907 (stable on metformin).) The evidence pointed to by the ALJ constitutes substantial evidence for the conclusion that Plaintiff's diabetes was not a severe impairment nor was her purported neuropathy a medically determinable impairment.[2]

Moreover, even if there were an error at step two, which there was not, Plaintiff cannot

---

[2] To the extent Plaintiff faults the ALJ for failing to specifically discuss her hemoglobin levels, her argument is unpersuasive. An ALJ need not discuss every piece of evidence. *See Reid v. Commissioner,* 769 F.3d 861, 865 (4th Cir. 2014). Here, the ALJ explained that he considered the entire record (Tr. 12, 15) and absent a reason to believe otherwise, the Court is entitled to rely on these representations, *see Grubby v. Astrue,* No. 1:09CV364, 2010 WL 5553677, at *6 (W.D.N.C. Nov. 18, 2010) (citing *Rappaport v. Sullivan,* 942 F.2d 1320, 1323 (8th Cir. 1991)). And, as demonstrated above, the ALJ addressed Plaintiff's diabetes and alleged neuropathy at great length thereby demonstrating his consideration of the medical records and other evidence related to diabetes and neuropathy.

prevail because the disability inquiry did not end at step two. In determining Plaintiff's RFC, the ALJ considered the impact of all the alleged symptoms, including those from Plaintiff's diabetes and purported neuropathy and the extent that they were supported by the objective evidence and other evidence. (Tr. 13, 15-17.) The ALJ then crafted an RFC finding that specifically limited Plaintiff's postural and environmental activities to account for her credibly supported limitations. (Tr. 15-19.) Substantial evidence supports the ALJ's step two findings and the RFC accounted for all of Plaintiff's established impairments.[3]

Plaintiff's arguments to the contrary are not persuasive. Plaintiff points to her hemoglobin levels and her testimony as support for her conclusion that she suffered uncontrolled diabetes, chronic hyperglycemia, and diabetic neuropathy.[4] (Docket Entry 15 at 3-12; Docket Entry 21 at 5.) Nevertheless, it is well-established that a mere diagnosis is not enough to prove disability; rather, "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). As explained throughout this Recommendation, particularly above and in Part C below, Plaintiff has failed to point to evidence compelling the conclusion that she suffered a functional loss from either diabetes or neuropathy that is not accounted for in the RFC. And, as further demonstrated below in Part C of this Recommendation, the ALJ also gave many good reasons in support of his RFC determination

---

[3] Plaintiff's first and third objections overlap. Consequently, the Court will also assess Plaintiff's challenge to the ALJ's treatment of her subjective complaints (including those related to her diabetes and alleged neuropathy) below in Part C.

[4] The Court has also evaluated Plaintiff's objections in her reply brief (Docket Entry 21) and finds them unpersuasive for the reasons set forth throughout this Recommendation.

and for partially disregarding Plaintiff's subjective complaints (including but not limited to those of lightheadedness, dizziness, burning/jolting sensations in hands or feet, and/or fatigue). Plaintiff's first objection warrants no relief.

## B. Step Five

Plaintiff next contends that "[c]ontrolling Fourth Circuit caselaw establishes that the ALJ committed a reversible error by failing to include a key nonexertional functional restriction in the hypothetical posed to the vocational expert at hearing[.]" (Docket Entry 15 at 12.) As explained below, this objection has no merit.

At step five, the Commissioner has the "burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir.2000)). Here, the ALJ relied upon vocational testimony to determine whether there are other jobs in the national economy which Plaintiff could perform. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted).

Plaintiff asserts that "[t]he ALJ's hypothetical to the VE was improper because the hearing decision's RFC assessment is more restrictive than the hypothetical RFC posed to the VE. The hypothetical does not fairly set out all of the [Plaintiff's] impairments because it does not specify an inability to use the arms and hands to grasp, turn, and hold objects." (Docket Entry 15 at 17.) This argument has no merit because the ALJ found that Plaintiff had no

10

manipulative limitations and this finding is supported by substantial evidence.

More specifically, the ALJ pointed to substantial evidence that Plaintiff maintained full range of motion, grip, fine and gross manipulation, sensation, and strength. (Tr. 14, 18, 631-35, 649.) Consequently, the ALJ asked the VE at the hearing to assume an individual limited to a full range of medium work except for additional postural, environmental, and pulmonary limitations.[5] (Tr. 1046-47.) The VE identified three representative medium occupations someone with Plaintiff's vocational profile and specific limitations could perform. (Tr. 1047.) The ALJ then found that Plaintiff was restricted to perform medium work with various postural, environmental, and pulmonary limitations that were supported by the record. (Tr. 15-19.) Because the ALJ found Plaintiff had no manipulative limitations both in the hypothetical question and the RFC, there was no conflict. Moreover, Plaintiff points to no objective evidence supporting her contention that she was limited in this area.[6] The ALJ committed no error, let alone harmless error.

---

[5] When the ALJ stated that Plaintiff could perform "medium work" as defined by the regulations with the exception of an array of postural, pulmonary, and environmental limitations, and did not include limitations on Plaintiff's abilities to lift, carry, stand, walk, or perform other activities listed in SSR 83-10, the ALJ clearly found that Plaintiff was capable of the full exertional requirements of medium work with specific non-exertional limitations. (Tr. 15.) *See, e.g., Vaughn v. Kijakazi*, No. 1:21CV1, 2022 WL 604257, at *5 (M.D.N.C. Mar. 1, 2022) ("[W]hen the ALJ found that Plaintiff remained capable of "light work *as defined in* [*Sections*] *404.1567(b) and 416.967(b)*," and then described, following the word "*except*," an array of manipulative, postural, environmental and mental restrictions, but did *not* include additional limitations on Plaintiff's abilities to lift, carry, stand, or walk (Tr. 22 (emphasis added)), the ALJ clearly found that Plaintiff remained capable of the full *exertional* requirements of light work[.]") To the extent Plaintiff contends otherwise, she is mistaken.

[6] And, as explained in footnote seven below, even if there were an error here (which there was not), it was harmless.

11

## C. Subjective Complaints

Last, Plaintiff contends that "[c]ontrolling Fourth Circuit caselaw establishes that substantial evidence does not support the ALJ's conclusion that [Plaintiff's] activities are consistent with his residual functional capacity assessment because the ALJ disregarded [her] qualifying statements regarding the limited extent to which she can perform daily activities and failed to adequately explain how her limited ability to carry out daily activities supports his conclusion that she could sustain an eight-hour workday[.]" (Docket Entry 15 at 18.) As explained below, this argument has no merit.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545, 416.920; *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid*, 769 F.3d at 865. However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks and citations omitted). "The RFC assessment must

12

first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

Moreover, a two-part test governs the evaluation of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-596. While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and heard the claimant's testimony and observed her demeanor, the ALJ's determination regarding Plaintiff's subjective complaints is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ stated that he had carefully considered the evidence and found that Plaintiff's "medically determinable

13

impairments could reasonably be expected to cause the alleged symptoms." (Tr. 17.) The ALJ therefore discharged his duty under the first step of the *Craig* analysis. Second, at step two of the *Craig* analysis, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

First, the ALJ indicated that he "considered all symptoms" (Tr. 15) and further referenced the testimony at both of Plaintiff's hearings, as well as her two function reports. (Tr. 13-15, 17-19, 340-47, 457-464.) The Court sees no reason to conclude that the ALJ failed to consider any of Plaintiff's statements, especially in light of the remainder of the reasons he gave for partially discounting her symptom allegations.

Second, the ALJ explained that he did not find persuasive Plaintiff's testimony that she gets lightheaded and has to lie down every day. (Tr. 13, 1032-33.) In support, the ALJ correctly observed that Plaintiff did not make such statements to her treatment providers. (Tr. 13, 16, 997, 1009; *see also* Tr. 669-70 (8/30/2018) (denying lightheadedness, denying hypoglycemic symptoms); 910 (2/24/2016) (denying lightheadedness/dizziness/hypoglycemia); 917-18 (8/31/2018) (denying lightheadedness, denying hypoglycemic symptoms); 869 (1/27/2019) (negative for dizziness and fatigue); 638, 642 (not easily fatigued); 907 (stable on metformin).) The ALJ also noted that Plaintiff's disease was managed in the primary care setting; she was not under the care of an endocrinologist; and if her disease were as unmanageable and as severe as she claims, it seems she would require expert care, but her medical history indicates she does not. (Tr. 13.) The ALJ also pointed out that no primary care provider stated that the

14

claimant needs to be evaluated or under the care of a diabetes specialist. (Tr. 13.)

Third, the ALJ explained that he did not find persuasive Plaintiff's testimony that neuropathy seriously affected her ability to use her hands or walk. (Tr. 13.) The ALJ correctly pointed out that there is no documentation of the results of a nerve conduction study, a needle electromyography, a tissue biopsy, or other objective study. (Tr. 14.) Nor is there clinical evidence of relevant sensory deficits. (Tr. 14.) The ALJ also explicitly declined to adopt Plaintiff's allegation that she had difficulty walking during the day because "She report[ed] that she would definitely feel if she stepped on a tack, but would maybe feel a penny. She feels like her feet [are] on fire mostly *just at night* and makes it hard to sleep." (Tr. 14, 998-99 (emphasis added).) The ALJ also pointed out that claimant's recent treatment history shows that she can use her feet without impairment. For example, in February 2020, Dr. Lauren Feng, M.D., her primary care physician, noted that the claimant's foot strength was intact, and that her gait was "unremarkable." (Tr. 14, 977.) Similarly, in June, claimant's foot strength was intact at 5/5, and that her gait was "unremarkable." (Tr. 14, 1005.)

Fourth, the ALJ explained that Plaintiff's purported carpal tunnel syndrome was a non-medically determinable impairment. (Tr. 14.) In his consultative report of February 2017, Dr. Ernest Eason, M.D. gave the claimant a provisional diagnosis of carpal tunnel syndrome based on her complaints of uncomfortable sensations in her hands and manipulative limitations. However, he noted that she had never been tested for the condition, and that she had never used wrist splints in the past. (Tr. 14, 647-50.) And as previously discussed, Plaintiff had not undergone nerve testing after the consultative examination. (Tr. 14.) Therefore, the ALJ

15

concluded that evidence of record was insufficient to establish that she has carpal tunnel syndrome. (Tr. 14.)

Fifth, the ALJ explained that Plaintiff's allegations of ongoing psychological symptoms were unsupported. (Tr. 14.) For example, Plaintiff regularly had normal mental health examinations. (Tr. 14-15, 559, 586, 631, 919, 954, 998, 1005.) She also largely denied having mental health symptoms in her responses to questions on a disability self-assessment form completed on May 1, 2020. (Tr. 15, 462-63.) Specifically, she denied having problems with memory, completing tasks, understanding, following instructions, or getting along with others. (Tr. 15, 462-63.) On the other hand, she indicated that she did not handle stress very well, and that she did not like change. However, the ALJ observed that Plaintiff did not provide any factual allegations or cite psychological or other evidence to support the generalizations about her adaptive functioning; and thus concluded that she had not established that she had an adaptation limitation. (Tr. 15, 463.)

Sixth, the ALJ also pointed out that though Plaintiff testified that she went to the emergency room in October of 2019 for back pain, those records show that her visit was unrelated to back pain. (Tr. 16, 891, 1043.) Seventh, the ALJ pointed out that Plaintiff complained of drowsiness because of her gabapentin, but that she did not report this as a side effect of taking the drug. (Tr. 16, 999, 1032.)

Eighth, the ALJ explained that he found unpersuasive Plaintiff's testimony that she could not stand for extended periods of time and do her household chores, because her flares of back pain were "intermittent," treated conservatively, and because her medical history does

16

not establish that she had functional limitations on a chronic basis. (Tr. 17.) In support, the ALJ pointed to Plaintiff's normal range of motion at a number of physical examinations. (Tr. 17, 558-59, 566-67, 684, 894.) The ALJ also pointed to a February 2020 inspection, where Plaintiff's back and gait were "unremarkable," and which also revealed a negative straight leg test, and intact sensation. (Tr. 17, 977.) Plaintiff's doctor concluded that her pain may have been triggered by "moving furniture" and he recommended a "heating pad." (*Id.*)

Ninth, the ALJ found unpersuasive Plaintiff's testimony that she sometimes experiences shortness of breath when performing exertional activities, such as standing in line. (Tr. 18.) And the ALJ concluded that the medical evidence did not show that her respiratory impairment significantly impaired her ability to perform ordinary physical activities. (Tr. 18.) In support, the ALJ pointed to evidence that in December 2016, she underwent a spirometry, and the pulmonary testing revealed moderate restriction. (Tr. 18, 639.) And in February 2017, Dr. Eason, the consultative examiner, noted that the claimant's chest examination revealed that her breathing was free of wheezes, rales, and rhonchi. (Tr. 18, 649.) He also noted: "She has no difficulty with going up and down stairs, steps. She has no difficulty with walking. She denies any history of shortness of breath, decreased stamina." (Tr. 18, 648.)

Tenth, the ALJ gave significant weight to the opinion of Dr. Melvin Clayton, M.D., a state agency medical consultant, who opined that Plaintiff could perform medium work with environmental limitations. (Tr. 18, 101-03.) The ALJ also gave significant weight to Dr. Eason's assessment that Plaintiff "functions normally" (Tr. 18, 650) and Dr. Thomas McKnight's assessment that Plaintiff does not have any consequential limitations (Tr. 18, 635).

17

Eleventh, the ALJ also relied in part on Plaintiff's activities of daily living. As the ALJ correctly pointed out, her daily activities included raising two of her grandchildren, doing housecleaning chores, doing laundry, preparing meals, shopping in stores, attending church two times per week, attending her grandson's soccer games, and walking for exercise. (Tr. 67, 70-72, 343-44, 970, 997, 1021, 1033, 1038-1041.) The Court concludes that all this is more than substantial evidence in support of the ALJ's subjective complaints and RFC analysis.[7]

---

[7] As explained, the Court sees no error here. However, even assuming there was an error (which there was not), the Vocational Expert testified to the existence of additional jobs that an individual with Plaintiff's RFC could perform at the light exertional level with a sit/stand limitation (Tr. 1047-48) and with only occasional handling, fingering, and feeling (Tr. 1048-49). Thus, even assuming there was an error here, it would be harmless because there are jobs that Plaintiff could perform that permitted her to sit or stand and also which limited her handling, fingering, and feeling. *See, e.g., Farmer v. Comm'r of Soc. Sec.*, No. 2:18-CV-13023, 2019 WL 4877531, at *7 (E.D. Mich. July 31, 2019) ("[A]ny failure to include a sit/stand option was harmless since the jobs of inspector and cashier, at the light work exertional level, have been found to continue to exist in significant numbers even where a sit/stand option was required."); *Timothy S. v. Berryhill*, No. 3:17-cv-1789-AC, 2018 WL 5973393, *2 (D. Or. Nov. 14, 2018) (finding that even if an ALJ erred in omitting a limitation from the RFC assessment, the ALJ's inclusion of that limitation in the VE hypothetical rendered the RFC error harmless); *Blodgett v. Comm'r of Soc. Sec. Admin.*, 534 F. App'x 608, 611 (9th Cir. 2013) ("Although the ALJ erroneously attributed to Blodgett an ability to stand for six, rather than four, hours, Blodgett has not met his burden of demonstrating that such an error was harmful. That error was harmless because it was accounted for by the vocational expert, who opined that there existed numerous positions that Blodgett could perform.") (citation omitted); *Leonard S. v. Saul*, No. 19-CV-1480L, 2021 WL 514276, at *4 (W.D.N.Y. Feb. 11, 2021) ("To the extent the RFC determined by the ALJ does not explicitly adopt the references in some of Dr. Gbadamosi's opinions to not sitting or standing for long periods (i.e., needing to change position), and avoidance of large groups, any error therein is similarly harmless, as at least two of the jobs identified by the vocational expert – marker and mail clerk – are consistent with the need to change positions at will, and all three are consistent with social interaction limitations that extend to supervisors and coworkers in addition to the public."); *Drena P. v. Comm'r of Soc. Sec.*, No. C20-5648-MAT, 2021 WL 2662297, at *7 (W.D. Wash. June 29, 2021) ("[T]he VE testified that some of the light jobs identified would allow changing between sitting and standing. Therefore, even if the ALJ erred in discounting the lay testimony regarding Plaintiff's ability to sit or stand for long periods, such error was harmless because the RFC accounted for the functional limitations identified by the lay witness."); *Watson v. Astrue*, No. CIV.A. 08-518-GWU, 2009 WL 3415356, at *5 (E.D. Ky. Oct. 20, 2009) ("The court notes that even if the ALJ erred in rejecting the opinion, the somewhat vague sit/stand limitation would appear to be consistent with at least a 30 minute sit/stand option. As previously noted, the vocational expert indicated such a restriction would

18

Plaintiff's arguments to the contrary are not persuasive. Plaintiff faults the ALJ for disregarding "qualifying statements regarding the limited extent to which she can perform daily activities and fail[ing] to adequately explain how her limited ability to carry out daily activities supports his conclusion that she could sustain an eight-hour workday[.]" (Docket Entry 15 at 18.) However, the ALJ did not fail to consider these statements and did not fail to explain and support his conclusion that Plaintiff could work an eight-hour workday. The Court sees no error here, much less a prejudicial one.[8]

As noted, the ALJ explained that he considered all of Plaintiff's symptoms, but partially disregarded some of them because they were inconsistent with the evidence of record. Beyond that, as explained, it appears to the Court that the ALJ considered all of Plaintiff's reports and testimony and, in his decision, specifically noted a number of Plaintiff's qualifying statements. For example, the ALJ noted that Plaintiff testified that her "main problem" was back pain in the form of sciatica (Tr. 16), that she also had leg pain, that she had to sit down while in a line to vote due to shortness of breath and back pain, that she had to take breaks during her household chores because of lower back pain, that her hands hurt a lot, that neuropathy in her feet affected her ability to walk, that she had to lie down for thirty minutes when she became

---

not affect the jobs she cited as being available under the hypothetical question. Therefore, any error in rejecting this opinion is harmless.").

[8] Plaintiff argues that an ALJ is not allowed to consider her lack of complaints to her treatment providers. (Docket Entry 15 at 11-12.) However, SSR 16-3p states that an ALJ will consider "information about symptoms recorded by medical sources and reported in the medical evidence" and recognizes that "[this] information may be compared with the individual's other statements in the case record." SSR 16-3p, 2017 WL 5180304, at *6-7. *See also Joe R. v. Berryhill*, 363 F. Supp. 3d 876, 885 (N.D. Ill. 2019) ("The absence of complaints where it would have been natural to have made them is a substantial basis for rejecting or discounting Plaintiff's present claims.") (collecting cases).

19

lightheaded due to glucose levels fluctuations, that she had days she wanted to lie in bed three or four times a week, that she "tries to walk around her yard or neighborhood," that she walks around the block twice a week (but that it takes thirty minutes), and that her back pain limits her ability to stand for extended period of times and do her household chores. (Tr. 16-17.)

The ALJ's decision thus reflects his consideration of Plaintiff's qualifying statements regarding her activities of daily living and—as demonstrated above—he gave good reasons for partially discounting Plaintiff's subjective complaints.[9] Moreover, the ALJ's decision sufficiently supports in a manner susceptible to judicial review his RFC determination and his determination that Plaintiff is capable of performing jobs available in the national economy. And, as explained, the ALJ identified other substantial evidence in the record to support his

---

[9] The Fourth Circuit has noted "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). When an ALJ considers a claimant's daily activities as inconsistent with her statements, the ALJ must also consider the claimant's qualifying statements as to how she performed them and explain how they support a conclusion that she can complete an eight-hour workday. *See Arakas v. Commissioner*, 983 F.3d 83, 99 (4th Cir. 2020). The present case is distinct from *Arakas*. First, the ALJ here did not rely *solely* on Plaintiff's daily activities to discount her subjective symptom reports, but rather as one part of an overall well-supported analysis. Second, far from ignoring Plaintiff's qualifying statements, as demonstrated above, the ALJ explicitly mentioned a number of them, including Plaintiff's allegation that her impairments limited her ability to perform household chores. Third, as explained, the ALJ considered all of Plaintiff subjective complaints, whether he specifically referenced them or not in the decision. *See Reid*, 769 F.3d at 865 ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence"). *Arakas* does not change the general rule set forth in *Reid*. Fourth, Plaintiff's ability to engage in her daily activities, even on a limited basis, provides support, along with the medical and opinion evidence discussed by the ALJ. Together, there is substantial evidence for both the ALJ's subjective complaints analysis and RFC determination. Fifth, it is clear from the ALJ's decision that he was not entirely persuaded by Plaintiff's subject complaints, particularly in light of the record described in detail above. In light of all of this, the ALJ did not materially err in assessing Plaintiff's subjective complaints, or her activities of daily living as one part of that analysis, and it is clear from the ALJ's decision how he concluded that Plaintiff could persist through an eight-hour workday. *See Woody v. Kijakazi*, No. 1:20CV918, 2022 WL 37025, at *7 (M.D.N.C. Jan. 4, 2022).

conclusion regarding Plaintiff's subjective complaints, irrespective of his observations regarding Plaintiff's ability to engage in activities of daily life. Accordingly, the Court finds no basis to disturb the ALJ's well-reasoned explanation for his subjective complaints determination, RFC, or any part of the decision.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 14) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 19) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

November 21, 2022
Durham, North Carolina

21